COLORADO CHIROPRACTIC COUNCIL, a Colorado non-profit corporation, Timothy D. Conwell, D.C., Dennis P. Nikitow, D.C., George E. Springer, Jr., D.C., Dale Baird, D.C., Daniel K. Baird, D.C., Jim Bondarovich, D.C., Douglas Burke, D.C., William Burson, D.C., Bernard Busch, D.C., Jon Paul Carmichael, D.C., James Davis, D.C., William F. Duchaine, D.C., Paul Farber, D.C., Paul E. Finegan, D.C., Joseph Gallegos, D.C., Richard E. Garde, D.C., and Terry Grear, D.C., Plaintiffs,

v.

PORTER MEMORIAL HOSPITAL, a Colorado corporation, Saint Anthony Hospital Systems, a Colorado corporation, Humana of Delaware, Inc., a Delaware corporation, the Community Hospital Association, a Colorado corporation, Humana of Aurora, Inc., a Colorado corporation, Longmont United Hospital Association, a Colorado corporation, Mercy Medical Center of Durango, a Colorado corporation, Saint Francis Hospital Systems, a Colorado corporation, and St. Thomas More Hospital and Progressive Care Center, a Colorado corporation, Defendants.

Civ. A. No. 86 F 562.

United States District Court,
D. Colorado.

July 7, 1986.

Memorandum Opinion and Order
on Sanctions Nov. 25, 1986.

---

Robert C. Ozer, Ozer, Spriggs & Trueax, P.C., Denver, Colo., for plaintiffs.

Wayne J. Fowler, Melvin B. Sabey, Saunders, Snyder, Ross & Dickson, P.C., Denver, Colo., for Porter Memorial Hosp. and Longmont United Hosp. Ass'n.

Donald A. Klene, Casey & Klene, P.C., Denver, Colo., for Saint Anthony Hosp. Systems.

James E. Hartley, Jack M. Englert, Jr., Holland and Hart, Denver, Colo., for Humana of Delaware, Inc. and Humana of Aurora, Inc.

G. Lane Earnest, Joy Fitzgerald, Caplan and Earnest, Boulder, Colo., for Community Hosp. Ass'n.

David P. Smith, Smith & West, Durango, Colo., for Mercy Medical Center of Durango.

Randolph M. Karsh, Colorado Springs, Colo., for Saint Francis Hosp. Systems.

Rocco F. Meconi, Hawthorne & Meconi, P.C., Canon City, Colo., for St. Thomas More Hosp. and Progressive Care Center.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

THIS MATTER is before the Court on Motions to Dismiss filed by defendants Humana of Delaware, Inc., Humana of Aurora, Inc., St. Anthony Hospital Systems, Boulder Community Hospital Association and St. Francis Hospital Systems ("the defendants"). This case involves forty-six chiropractors and a chiropractic council alleging antitrust violations on the part of nine Colorado health care providers. This case also presents the type of baseless litigation which Rule 11 of the Federal Rules of Civil Procedure was designed to address. We have carefully considered the pleadings, briefs, and affidavits filed by the parties, as well as the applicable law. The Motions to Dismiss are GRANTED. Furthermore, we find that the filing of this action was frivolous, vexatious, and in violation of Fed.R.Civ.P. 11.

### I.

Plaintiffs are doctors of chiropractic and a nonprofit corporation, Colorado Chiropractic Council, formed to promote the interests of members of the chiropractic profession. Plaintiffs allege that, for at least the past ten years, defendants, individually and in concert with one another, have obstructed plaintiffs' attempts to utilize the hospitals' resources and have denied them hospital staff privileges. Plaintiffs assert that this course of conduct violates Sections One and Two of the Sherman Antitrust Act, 15 U.S.C. § 1, 2 and Colorado Revised Statute § 6-4-101 *et seq.* Plaintiffs seek compensatory damages of ten million dollars, exemplary damages of ten million dollars, treble damages, a permanent injunction, attorney's fees, costs, and interest.

The defendants have moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants principally contend that the Court lacks subject matter jurisdiction and that the Complaint fails to state a claim upon which relief may be granted.

### II.

As we have considered matters outside the pleadings in resolving this matter, we

must treat the Motions to Dismiss as Motions for Summary Judgment. Fed.R. Civ.P. 12(b).

Summary judgment is a drastic measure which must be applied with caution. *Frito-Lay, Inc. v. Retail Clerks' Union Local No. 7*, 629 F.2d 653, 656 (10th Cir.1980). Nevertheless, it is appropriate in cases where there is no genuine dispute as to material facts and the movant is entitled to judgment as a matter of law. *See LeFevre v. Space Communications Co.*, 771 F.2d 421 (10th Cir.1985); *Charczuk v. Commissioner of Internal Revenue*, 771 F.2d 471 (10th Cir.1985); *Weir v. The Anaconda Co.*, 773 F.2d 1073 (10th Cir.1985). In this instance, initially we consider, as a matter of law, whether we have subject matter jurisdiction over this action.

### III.

■ Article III of the Constitution confines the federal courts' subject matter jurisdiction to cases and controversies. To meet the case and controversy requirement a dispute must be ripe for adjudication and the litigant must have standing to bring the suit. The Article III component of standing requires that a plaintiff allege he has suffered actual or threatened injury at the hands of the defendant, *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), fairly traceable to the allegedly unlawful conduct, *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), and likely to be redressed by the requested relief, *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 45, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

While Section 4 of the Clayton Act, 15 U.S.C. § 15, authorizes a private party to seek relief under the anti-trust laws, not every private person has standing to assert such claims. The mere allegation of a violation of the anti-trust laws does not provide automatic standing to commence an action. *Winckler & Smith Citrus Prods. Co. v. Sunkist Growers, Inc.*, 346 F.2d 1012, 1014 n. 1 (9th Cir.1965).

In a case such as this, where the plaintiffs claim that the defendants have denied them staff privileges, they must show that they have attempted to deal with the defendant hospitals. It is well settled that "[u]nless the anti-trust claimant has actually sought to deal with someone and has been turned down, there can be no cognizable claim for refusal to deal". *Windy City Circulating Co. v. Charles Levy Circulating Co.*, 550 F.Supp. 960, 964 (N.D.Ill.1982); *Paddington Corp. v. Major Brands, Inc.*, 359 F.Supp. 1244, 1299 (W.D.Okla.1973); *see also Wanderlingh v. May Dep't. Stores Co.*, Civil Action No. 84 F 980, Order at page 3 (D.Colo. Sept. 10, 1984) [Available on WESTLAW, DCTU database] (in absence of demand for employment there can be no anti-trust claim for refusal to deal).

■ Accordingly, each of the forty-six individual plaintiffs must allege that he or she made a good faith attempt to obtain staff privileges at defendant hospitals or similar access with the defendants. Further, each defendant must allege that they were denied such access. Only then will the plaintiff have sufficiently alleged an injury fairly traceable to the conduct of defendants.

The uncontradicted affidavits of the various administrators and representatives of the defendants establish that none of the plaintiffs ever applied for staff privileges through the normal procedures applicable to all staff applicants of defendant hospitals. Plaintiffs have attempted to contradict defendants' position through the affidavit of Michael W. Parrish, D.C. Plaintiffs, through the affidavit of Mr. Parrish, contend that a single letter from an attorney representing a group of chiropractors constitutes a bona fide application for hospital privileges at the named hospitals. The letter from plaintiffs' counsel, dated February 3, 1986, (1) requests a blanket grant of staff privileges to doctors of chiropractic *in general;* (2) discusses in detail a decision of a U.S. Court of Appeals, setting forth an analysis which we do not feel is

wholly accurate;[1] (3) implies that under this Court decision, both the defendants and individual physicians associated with the defendants may be liable for treble damages if they fail to grant a request for privileges; and, (4) closes with a threat to initiate litigation if the defendants fail to respond or respond negatively within thirty days. We find the contention of plaintiffs to be without merit and completely lacking in substance as the basis for an antitrust action.

Moreover, defendants' affidavits establish that none of the plaintiffs were ever denied the right to practice at any of the hospitals.

In essence, plaintiffs have put the cart before the horse as did the plaintiff in a case before the Southern District of Mississippi. *Griffing v. Lucius O. Crosby Mem. Hosp.*, 1984-1 Trade Cas. (CCH) ¶ 67, 854 (S.D.Miss.1984). In *Griffing*, there was no evidence that the plaintiff ever applied for staff privileges or had been denied the right to practice at defendant hospital. Therefore, the court found that the plaintiff had failed to show any anti-trust injury. *Id.* at p. 67, 565–66.

In this case, the plaintiffs have failed to establish an injury fairly traceable to the conduct of the defendants. Plaintiffs' lack of staff privileges at the defendant hospitals is as much a result of their own failure to utilize normal application procedures, as it is any conduct of the defendants.

■ Similarly, the Colorado Chiropractic Council, like the individual plaintiffs, has failed to allege any injury suffered from the claimed anti-trust violations. In fact,

the Council could not possibly suffer any such injury, because it is a non-profit organization that has no business or property subject to possible injury by the alleged anti-trust violations. *See, e.g., Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 541–43, 103 S.Ct. 897, 910–911, 74 L.Ed.2d 723 (1983); *New Jersey Chiropractic Soc'y v. Radiological Soc'y,* 156 N.J.Super. 365, 383 A.2d 1182, 1184 (Ch.Div.1978). The Council by its very nature could not apply for privileges at any of the defendant hospitals or be excluded from them.

■ We also find that this dispute has not matured sufficiently to warrant judicial intervention. Until plaintiffs pursue the appropriate channels through which they could gain the required privileges, their alleged injury is not immediate; rather, it is remote and speculative and not ripe for adjudication. *See United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

While defendants Porter Memorial Hospital, Mercy Medical Center of Durango, and Longmont United Hospital Association have not filed motions to dismiss, they have requested this relief in their Answers. Based on the pleadings and for the reasons set forth herein, plaintiffs' Complaint against these defendants is dismissed as well.

ACCORDINGLY, plaintiffs' Complaint and cause of action are DISMISSED as to all defendants. There are no genuine issues of material fact, and defendants are entitled to judgment as a matter of law.[2]

---

**1.** We need not go into a full-blown analysis of the *Wilk v. American Medical Association,* 719 F.2d 207 (7th Cir.1983) decision. We will note, however, the following: (1) the *Wilk* decision is factually distinguishable. In *Wilk,* there was evidence that the defendants had refused to deal with the plaintiffs. Such evidence is wholly lacking in this case. (2) Plaintiffs' characterization of the decision is overstated. We do not believe that the statement *"any* action ... which denies to the chiropractic profession in general, access to hospital facilities ... is contrary to ... the Sherman Anti-Trust Act, subject only to the possible defense ..."* accurately reflects the case holding. This statement implicitly misrepre-

sents the respective burdens of proof borne by the parties. It neglects the fact that any party challenging conduct by the defendants has the burden of showing that such conduct has the effect of restricting competition rather than promoting. *Wilk* at 227. (3) This case did not find a violation of the antitrust laws. The case was remanded for a new trial. (4) Finally, plaintiffs' letter implies that, *under this decision,* a failure to grant *"this application"* will result in exposure to liability.

**2.** While we have dismissed this case under the standard for granting summary judgment, we

## IV.

We do not exercise our discretion to impose Federal Rule of Procedure 11 sanctions lightly.[3] We will, however, do so in the appropriate case. *See, e.g., Chevron, U.S.A, Inc. v. Hand,* 763 F.2d 1184 (10th Cir.1985).

We are convinced that the filing of this lawsuit and the circumstances surrounding it show a clear abuse of the judicial process.[4]

The language of Rule 11 imposes an affirmative duty on judges to impose sanctions when the rule has been violated. *Chevron, U.S.A., Inc.,* 763 F.2d 1184, 1187 (10th Cir.1985); *Sealtite Corp. v. General Services Administration,* 614 F.Supp. 352 (D.Colo.1985). Rule 11, as recently amended, provides in relevant part that:

> [t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law of a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an

order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. [Emphasis added].

 The new language of Rule 11 "is intended to reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions". *See* Advisory Committee Notes to 1983 Amendment. A showing of subjective bad faith is no longer necessary to the imposition of fees. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985). "Simply put, subjective good faith no longer provides the safe harbor it once did." *Id.* at 253. The standard is now "one of reasonableness under the circumstances". Advisory Committee Notes, citing *Kinee v. Lincoln Savings & Loan,* 365 F.Supp. 975 (E.D.Pa. 1973). *Accordingly, attorneys have an affirmative duty to make reasonable inquiry into both the facts and the law relevant to their pleadings and motions prior to signature. See* Advisory Committee Notes to 1983 Amendment. *Moreover, Rule 11 clearly provides that by signing a pleading, an attorney or party certifies not only that there is a reasonable basis for filing, but also that the pleading has not been interposed for any improper purpose.*

 If there is no objective basis for an attorney's belief that his client's claims are warranted by existing law or a good faith extension, modification or reversal of existing law then sanctions should be imposed.

---

note that we would have reached the same conclusion under Fed.R.Civ.P. 12. We have carefully scrutinized the pleadings in this case. We conclude beyond all doubt that plaintiffs' Complaint fails to set forth any set of facts in support of their claim which entitles them to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kennedy v. Meachum,* 540 F.2d 1057 (10th Cir.1976).

3. Defendants Mercy Medical Center, Porter Memorial Hospital, Longmont United Hospital, Boulder Community Hospital, and Saint Anthony Hospital Systems have all requested an

award of attorney's fees and costs on grounds of frivolousness.

4. We have considered whether a hearing on sanctions would be appropriate. However, where the abuse of the judicial process and the unreasonableness of a party's position is so clear from the pleadings and documents in the file, we are of the view that a hearing would serve no purpose. Where the record speaks for itself, we will not further protract frivolous litigation by requiring a hearing.

*See Woodfork By And Through Houston v. Gavin,* 105 F.R.D. 100 (D.Miss.1985). The Tenth Circuit has noted an analogous context that:

> It is well established that courts have the inherent power to impose a variety of sanctions on both litigants and attorneys to regulate their docket, promote judicial efficiency, and deter frivolous filings. (citations omitted)

*Morris v. Adam-Millis Corp.,* 758 F.2d 1352, 1357 n. 7 (10th Cir.1985).[5]

Federal Courts in this district have not hesitated to impose sanctions when a party has failed to make a reasonable inquiry into the facts or law relevant to their pleadings and motions.[6] *See Sealtite Corp. v. General Services Administration,* 614 F.Supp. 352 (D.Colo.1985) (no objective basis to believe that claims were warranted by the law); *Wold v. Minerals Engineering Co.,* 575 F.Supp. 166 (D.Colo.1983) (failure to make reasonable inquiry into the facts prior to filing motion; no personal interviews of knowledgeable witnesses were conducted; limited telephone inquiries did not meaningfully address the relevant facts); *Weir v. Lehman Newspapers, Inc.,* 105 F.R.D. 574 (D.Colo.1985) (no plausible basis for invoking the court's subject matter jurisdiction); *Cf. Ornelas v. Heckler,* 598 F.Supp. 1089 (D.Colo.1984) (award of attorney's fees under the Equal Access to Justice Act where position of government during course of litigation was not substantially justified).

Moreover, such sanctions have repeatedly been upheld by this, as well as other, circuits. *See, e.g., Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184 (10th Cir.1985); *Orange Production Credit Assoc. v. Frontline Ventures Ltd., et al.,* 792 F.2d 797 (9th Cir.1986); *Bartel Dental Books Co., Inc., et al. v. Schultz, et al.,* 786 F.2d 486 (2nd Cir 1986); *Hale v. Honorable Naomi Harney,* 786 F.2d 688 (5th Cir.1986); *see also Albright v. Upjohn Co.,* 788 F.2d 1217 (6th Cir.1986) (reversing and remanding for imposition of sanctions).[7]

■ We simply cannot accept the proposition that the filing of this lawsuit was reasonable under these circumstances. We believe that a reasonable inquiry into the facts surrounding this case would have disclosed that these plaintiffs had never applied for the privileges they sought. While the plaintiffs and plaintiffs' counsel may have subjectively believed that such application would have been fruitless, we feel that a *reasonable inquiry* of the law would have established that this course of action was necessary. Ignorance of the basic principles of standing and jurisdiction, which results in the institution of protracted, expensive lawsuits, cannot be countenanced. *Weir v. Lehman Newspapers, Inc.,* 105 F.R.D. 574, 576 (D.Colo. 1985).

Moreover, the February 3, 1986 letter from plaintiffs' counsel to defendants cannot be construed as a good faith application for privileges. A better characterization of this letter would be that it constituted a

---

5. Pursuant to the provisions of 28 U.S.C. § 1927, the Tenth Circuit has approved the imposition of sanctions to deter frivolous filings. Section 1927 provides: Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct. In situations similar to this one, courts have viewed Rule 11 and Section 1927 as alternative bases for imposing sanctions. *See, e.g., Woodfork By and Through Houston v. Gavin,* 105 F.R.D. 100 (D.Miss.1985). *See also* Appendix B for additional Section 1927 cases in this circuit.

6. *Cf. State of Ohio v. Crofters, Inc.,* 75 F.R.D. 12 (D.C.Colo.1977), *affirmed sub nom., State of Ohio v. Arthur Anderson & Co.,* 570 F.2d 1370 (10th Cir.1978) (imposition of sanctions and award of attorney's fees pursuant to Fed.R. Civ.P. 37). *See also* Appendix A for a synopsis of other cases in this circuit imposing Rule 37 sanctions.

7. For an excellent survey of cases where sanctions have been imposed pursuant to Rules 11, 37 and 28 U.S.C. § 1927, *see* American Bar Association, *Sanctions: Rule 11 and Other Powers* (1986).

thinly veiled threat. Facially, it was designed to coerce defendants into granting staff privileges to a group of chiropractors, without regard to individual qualifications. The letter demanded staff privileges irrespective of defendants' legitimate business interests or the public's interest in qualified medical practitioners. When defendants failed to respond to this bold, officious demand, the plaintiffs made good on their promise to subject the defendants to a potentially protracted and expensive lawsuit. Baseless lawsuits must be discouraged and by this Memorandum Opinion and Order, it is our objective to take appropriate action warranted by plaintiffs' course of conduct.

We do not feel that it is an undue burden to expect a party to *apply for* a professional privilege prior to bringing a lawsuit alleging that such privilege has been denied, especially where over twenty million dollars is requested as recompense for supposed "injury". Other courts have reached similar conclusions in analagous situations. *See United Food & Commerical Workers v. Armour & Co.*, No. C–84–0080–RFP (unpublished) (N.D.Cal. June 29, 1984) (Rule 11 sanctions imposed where a union had filed an action against an employer alleging refusal to arbitrate when in fact the union had not demanded arbitration until after the action had been filed); *Cf. Colacci v. New York Times Co.*, 533 F.Supp. 1011 (S.D.N.Y.1982) (court awarded fees in Title VII action where plaintiff, who alleged employment discrimination, had never applied for the position. Informal request for consideration was no substitute for applying for position in the appropriate manner).

Further, the record in this case and the surrounding circumstances are such that one may seriously consider whether there was any legitimate purpose to this lawsuit. This litigation has all the earmarks of a suit intended to coerce and intimidate the defendants into a course of action by virtue of the suit itself, rather than one intended to redress a legitimate controversy.

Plaintiffs' conduct has resulted in nine hospitals, located throughout the State of Colorado, being distracted from their functions as health care providers. Rather, they have been forced to spend a great deal of time, expense, and effort defending a frivolous lawsuit of considerable proportion. This lawsuit was filed March 24, 1986. Since that date, there have been countless Motions for Protective Orders, Dismissal, Extensions of Time, and numerous detailed Answers to the Complaint.[8]

Further, this lawsuit has required a great amount of time and effort on the part of this Court, a Court which is already sufficiently occupied by legitimate lawsuits. Frivolous suits, such as this,

> "tend to impose unjustified burdens on other parties, frustrate those who seek to vindicate their rights in the courts, obstruct the judicial process, and bring the civil justice system into disrepute."

Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181 (1985).

■ In sum, we feel that attorneys have an obligation to make reasonable inquiry into both the law and the facts surrounding their clients' disputes prior to initiating a lawsuit. This obligation is imposed not only by Rule 11 and 28 U.S.C. § 1927, but also by the ethical obligations of the legal profession. Such inquiry may well disclose that their clients' interests may best be served by alternative methods of dispute resolution, avoiding the time and expense involved in a protracted lawsuit. Compliance with this basic obligation will help protect the considerable public interest in prompt resolution of meritorious disputes.

■ Finally, we concur with this observation of the court in *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985):

> We do not intend to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law. Vital changes have been wrought by those members of the

---

**8.** In fact, in the relatively short period of three months since this lawsuit was filed, there have been approximately 75 filings, producing a file three inches thick.

bar who have dared to challenge the received wisdom, and a rule that penalized such innovation and industry would run counter to our notions of the common law itself. Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer. But where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated. Such a construction serves to punish only those who would manipulate the federal court system for ends inimicable to those for which it was created.

For the reasons set forth, we find that Rule 11 has been violated by plaintiffs. Having so found, appropriate sanctions will be imposed against plaintiffs.

**ORDER**

The Clerk of the Court is DIRECTED to enter judgment in favor of the defendants and against plaintiffs. The Complaint and cause of action are DISMISSED.

It is further ORDERED that defendants are entitled to attorney's fees and costs as sanctions pursuant to Rule 11, Fed.R.Civ.P. To aid in this determination, defendants are DIRECTED to file by July 16, 1986, statements and affidavits concerning attorney's fees and costs, supported by appropriate time records. In response, plaintiffs are DIRECTED to file a statement and affidavits, if any, by 5:00 P.M. on July 25, 1986.

APPENDIX A

Sanctions have been imposed pursuant to Rule 37 of the Federal Rules of Civil Procedure in the following Tenth Circuit cases:

*Gates v. United States,* 752 F.2d 516 (10th Cir.1985) (District Court's dismissal of claim for failure to appear at court-ordered deposition affirmed.)

*D & H Marketers, Inc. v. Freedom Oil & Gas, Inc.* 744 F.2d 1443 (10th Cir.1984) (District Court order entering default judgments against eight defendants after they failed to comply with a discovery order despite an earlier sanction by the court and a written warning against further non-compliance. Appeal dismissed for lack of jurisdiction.)

*Mertsching v. United States,* 704 F.2d 505 (10th Cir.), *cert. denied,* 104 S.Ct. 150 (1983) (District Court dismissed case where plaintiff refused to comply with order compelling discovery. Affirmed.)

*Brown v. McCormick,* 608 F.2d 410 (10th Cir.1979) (Default judgment entered after the defendants failed to meet several filing deadlines and then failed to appear at their depositions. Affirmed.)

*Murphy v. Fatzer,* 23 Fed.R.Serv.2d 869 (10th Cir.1977) (Dismissal of pro se complaint for failure to comply with court orders regarding discovery. Affirmed.)

*Casson Construction Co., Inc. v. Armco Steel Corp.,* 91 F.R.D. 376 (D.Kan.1981) (Dismissal warranted where defendant's justifications for failing to comply with the court's orders were merely "bad faith efforts to avoid revealing relevant, discoverable information".)

*Tisdale v. Darkis,* 101 F.R.D. 307 (D.Kan. 1984) (Dismissal for gross neglect in failing to comply with discovery deadlines and court orders compelling discovery.)

*Devore & Sons, Inc. v. Aurora Pacific Cattle Co.,* 560 F.Supp. 236 (D.Kan.1983) (Defendant's counterclaim dismissed for failure to comply with a discovery order.)

*Barker v. Bledsoe,* 85 F.R.D. 545 (W.D. Okla.1979) (Plaintiff prohibited from using certain evidence, attorney's fees and costs incurred on motion assessed for failure to answer interrogatories.)

*Rajala v. Allied Corp.,* No. 82–2282 (D.Kan. Jan. 10, 1985) [Available on WESTLAW, DCTU database] (Attorney's fees and costs imposed for failure to comply with court order compelling discovery.

APPENDIX B

Sanctions have been imposed pursuant to 28 U.S.C. § 1927 in the following Tenth Circuit cases:

*Charczuk v. Commissioner of Internal Revenue,* 771 F.2d 471 (10th Cir.1985) (Attorney's fees and costs to be paid by litigants personally for frivolous appeal.)

*Herzfeld & Stern v. Albert J. Blair, Jr.,* 769 F.2d 645 (10th Cir.1985) (Double plaintiff's costs and reasonable attorney's fees assessed for appeal totally lacking in substance and filed in bad faith.

*Lloyd J. Dreiling v. Peugeot,* 768 F.2d 1159 (10th Cir.1985) (District court ordered attorney's fees and costs where plaintiff commenced the action "without grounds, either factually or legally", and maintained the case for over a year "in bad faith, vexatiously, wantonly, and for oppressive reasons". Affirmed.)

*Glass v. Pfeffer,* 657 F.2d 252 (10th Cir. 1981) (Attorney's fees assessed for vexatious and unreasonable conduct.)

## MEMORANDUM OPINION AND ORDER ON SANCTIONS

On February 3, 1986, a letter on behalf of a group of Colorado chiropractors was sent to several hospitals in the State of Colorado. The letter demanded staff privileges for chiropractors and threatened litigation against hospitals which refused these demands. On March 24, 1986, plaintiffs initiated this antitrust litigation against the eight hospitals that responded negatively to the letter. We dismissed the action because the February 3 letter did not constitute a proper application for staff privileges, no applications had been rejected, and thus no hospitals had refused to deal with plaintiffs within the meaning of the Sherman Antitrust Act, 15 U.S.C. §§ 1, *et seq.*

In the Memorandum Opinion and Order dated July 7, 1986, we granted defendants'

Motions to Dismiss, terminating the litigation against all defendants. Additionally, we found that the suit violated Rule 11 of the Federal Rules of Civil Procedure and imposed sanctions.

Thereafter, on October 16, 1986, an evidentiary hearing was held to determine appropriate sanctions.[1] As we had earlier found, the complaint and cause of action were frivolous. We have reviewed the written submissions, exhibits, and testimony, and enter the following as our findings of fact and conclusions of law.

Plaintiffs stipulated with each of the defendants, except Porter Memorial Hospital ("Porter") and Longmont United Hospital Association ("Longmont"), to a lump sum sanction.[2] That Stipulation on the issue of reasonable attorney fees and costs expended in this litigation by the settling defendants is approved by the Court, and is a reasonable fee award to be paid to counsel of the stipulating defendants (except Porter and Longmont hospitals). The Stipulated amounts are as follows:

| NAME OF ATTORNEYS | STIPULATED AMOUNT ON ISSUE OF REASONABLENESS |
| --- | --- |
| Holland and Hart: | |
| Humana of Delaware, Inc. | |
| Humana of Aurora, Inc. | $7,953 |
| Caplan and Earnest: | |
| Boulder Community Hospital | $7,500 |
| Holland and Hart: (formerly Spurgeon, Haney and Howbert) | |
| St. Francis Hospital Systems | $4,500 |
| Casey and Klene: | |
| St. Anthony Hospital Systems | $3,609 |
| Smith and West: | |
| Mercy Medical Center of Durango | $2,885 |

Accordingly, this Order discusses the appropriate sanctions to be assessed against plaintiffs and in favor of Porter and Longmont and their counsel.[3] Fees and costs

---

1. Defendants filed written statements as to requested attorney fees and costs. Plaintiffs submitted detailed objections to the fee and costs statement, thereby necessitating an evidentiary hearing to determine reasonable hours and rates. *Blum v. Stenson,* 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541 n. 5, 79 L.Ed.2d 891 (1984); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 472–73 (2d Cir.1974).

2. The stipulated sanctions purport to represent the number of reasonable hours expended multiplied by a reasonable rate, plus reasonable litigation expenses.

3. Defendant St. Thomas More Hospital and Progressive Care Center entered into a stipulated judgment on May 16, 1986, prior to our Order dismissing the case and awarding sanctions. This final judgment is respected by the Court.

requested by counsel for Porter and Longmont are as follows:

| | |
|---|---|
| Porter Memorial Hospital | $25,684 |
| Longmont United Hospital Association | $20,695 |

## I.

The law firm of Saunders, Snyder, Ross and Dickson, P.C. ("Saunders, Snyder") represented defendants Porter and Longmont in this litigation. At the evidentiary hearing, Saunders, Snyder called James M. Lyons, Esq., a Denver attorney. Mr. Lyons was qualified as an expert witness on the question of reasonable attorney fees in antitrust cases. Robert S. Treece, Esq., a Denver attorney, was likewise qualified as an expert on attorney fee awards. Mr. Treece acknowledged that he was not an expert on antitrust law.

Testimony conflicted on several issues. The parties disagreed over the strategy used by Saunders, Snyder in responding to the Complaint. For example, all other defendants responded to the Complaint by filing Motions to Dismiss. The Court dismissed the case as to all defendants on the basis of these Motions. Saunders, Snyder filed an Answer to the Complaint and in addition prepared a Motion for Summary Judgment. The summary judgment motion was filed on the day after we dismissed the case and was denied as moot.

Plaintiffs contend that Saunders, Snyder should not be recompensed for work spent preparing the summary judgment motion. They argue that Rule 11 of the Federal Rules of Civil Procedure only contemplates an award of attorney fees and costs which are directly related to work spent responding to the pleading that violated the Rule. Saunders, Snyder takes the position that their summary judgment motion *did* respond to the Complaint, albeit late, and hours spent preparing the motion are properly includable in our Rule 11 award.

The parties disagree over whether hours expended prior to the filing of the lawsuit are compensable. Saunders, Snyder billed their clients for time spent analyzing and responding to the letter sent to each of the hospitals demanding staff privileges for chiropractors. The letter, which precipitated the litigation, was mailed on February 3, 1986, and the suit was filed on March 24, 1986. Plaintiffs claim that hours spent prior to the filing of the Complaint should not be counted in computing a fee award. Saunders, Snyder argue that the letter was the first of many dilatory practices engaged in by plaintiffs and that the letter is so directly related to the Complaint that all time spent after receipt of the letter is properly includable in a fee computation.

The parties also differ over whether the defendants, in the aggregate, coordinated their efforts well enough to avoid duplicative costs and to prepare the most cost efficient defense. Saunders, Snyder claims that it acted as coordinating counsel and took the lead in devising model answers and other pleadings for use by the rest of the defendants. Plaintiffs argue that none of the other defendants used any model pleadings prepared by Saunders, Snyder, and that the role of lead counsel should have been delegated to James Hartley, Esq., who represented the Humana defendants. Mr. Hartley is an instructor in antitrust law. We note that Saunders, Snyder billed a considerable number of hours conducting research into antitrust law, emphasizing the recent trend in medical antitrust litigation, and also incurred a $3,136.09 bill for special antitrust consulting work performed by the law firm of Baker and Hostetler, in Washington, D.C.

Plaintiffs also object that Saunders, Snyder did not include its hourly rates in the statements submitted to the Court. In addition, it is claimed by plaintiffs that at the evidentiary hearing Saunders, Snyder's billing rates were not developed on direct examination, and were improperly elicited on rebuttal. At the hearing, plaintiffs moved to dismiss Saunders, Snyder's fee application because of these improprieties. However, we will not apply hypertechnical rules that would negate the spirit and intent of our Order awarding Rule 11 sanctions.

This Order does not apply to defendant St. Thomas More.

The Court will assign reasonable hourly rates to the work performed by Saunders, Snyder based on the prevailing market rate. *Cf. Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) (attorney fee awards under 42 U.S.C. § 1988 calculated with market rates).

## II.

■ An award of monetary sanctions under Rule 11 is limited to "reasonable expenses incurred ... including a reasonable attorney's fee". Fed.R.Civ.P. 11. *See Chevron, U.S.A. Inc. v. Hand*, 763 F.2d 1184, 1187 (10th Cir.1985). Sanctions are not measured by *actual* expenses and fees, but rather by the Court's discretionary determination of *reasonable* expenses and fees. *See* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 203 (1985). Attorney fees should be assessed only for time spent responding to the frivolous pleading. *Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558, 570 (E.D.N.Y. 1986); *Weisman v. Rivlin*, 598 F.Supp. 724, 726 (D.D.C.1984); *Schwarzer, supra*, at 203.

■ In fashioning appropriate sanctions under Rule 11, we must consider a variety of factors relating to the litigants and the litigation. *See Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558, 571 (E.D.N.Y.1986). Among the most important factors are the procedural posture of the case at the time of the frivolous filing, and the extent to which a non-monetary sanction would fulfill the spirit and tenor of Rule 11. In this case we have considered additional factors, including the (1) nature of the litigation; (2) experience of the attorney who signed the pleading; (3) degree of frivolousness; (4) ability of the sanctioned party or attorney to pay; (5) need for compensation; and (6) the deterrent purpose of Rule 11.

We find that Saunders, Snyder should be compensated for only a limited number of the hours billed to its clients in this case. Testimony at the evidentiary hearing established that health care antitrust litigation is a burgeoning field. Although plaintiffs' lawyers must be made aware of the implications of filing premature antitrust lawsuits, we recognize that courts should not risk chilling the development of this area of the law by assessing excessive sanctions.

Robert Ozer, Esq., one of the attorneys for plaintiffs, on February 3, 1986, sent the initial letter to defendant hospitals setting forth allegations and threatening litigation. Saunders, Snyder billed Porter and Longmont in excess of $45,000 for services rendered after receipt of the February 3 letter. By way of comparison, the largest stipulated sanction for services rendered was $7,953. Keeping in mind the requirement that only hours spent responding to the frivolous pleading are compensable, we have reduced Saunders, Snyder's fee application to arrive at a reasonable computation of expenses and fees incurred as a direct result of plaintiffs' sanctioned actions. The deterrent purpose of Rule 11 will be adequately served by assessing a moderate monetary sanction in favor of Saunders, Snyder. We have carefully considered the matter, and reject imposition of a nonmonetary sanction.

## III.

■ Saunders, Snyder responded to the frivolous Complaint by filing an Answer. Its Motion for Summary Judgment was not a response to the Complaint, but rather an alternative approach to resolving the substantive issues of the case. Hours expended in preparation of the summary judgment motion will not figure into our computation. Similarly, hours billed for work done prior to the filing of the Complaint are not compensable because the Complaint, rather than the February 3 letter, was the offensive pleading. We have reviewed the statements submitted by Saunders, Snyder and have counted only the hours billed between March 24, 1986 and May 6, 1986 (the date on which Answers were filed on behalf of Porter and Longmont). Of those hours, we have subtracted the hours spent working on discovery matters and on other matters not reasonably related to the conceptualiza-

tion and preparation of a responsive pleading.

Furthermore, we have included in our computation a portion of the bill submitted to Saunders, Snyder by Baker and Hostetler. The portion allowed represents an approximation, gleaned from the bill submitted by Baker and Hostetler, of work performed from March 24 to May 6. Similarly, we have apportioned the costs incurred by Saunders, Snyder to approximate the amount expended during the time frame noted above. We have determined from the statements submitted by all the defendants, testimony elicited at the evidentiary hearing, and from general insight into legal billing practices, that the prevailing market rates for services of the type rendered in this case are as follows: for attorneys—$100.00 per hour; for law clerks—$50.00 per hour; and for paralegals —$40.00 per hour.

The following chart represents the total attorney fees and costs assessed against plaintiffs and their counsel as Rule 11 sanctions allocable to work performed by Saunders, Snyder:

### PORTER

| Item | Hours | Rate | Amount |
| --- | --- | --- | --- |
| Baker and Hostetler | | | $ 750 |
| Costs | | | 350 |
| Attorneys | 51.80 | $100 | 5,180 |
| Law clerks | 5.85 | 50 | 292 |
| Paralegals | .50 | 40 | 20 |
| TOTAL | | | $6,592 |

### LONGMONT

| Item | Hours | Rate | Amount |
| --- | --- | --- | --- |
| Baker and Hostetler | | | $ 750 |
| Costs | | | 350 |
| Attorneys | 41.45 | $100 | 4,145 |
| Law clerks | 3.85 | 50 | 192 |
| Paralegals | .70 | 40 | 28 |
| TOTAL | | | $5,465 |

The following summary represents the sanctions assessed against plaintiffs and their counsel as to all defendants:

| Name | Amount |
| --- | --- |
| Caplan and Earnest (Community Hospital) | $ 7,500 |
| Casey and Klene (St. Anthony Hospital) | 3,609 |
| Holland and Hart (Humana Hospitals) | 7,953 |
| Holland and Hart (St. Francis Hospital) | 4,500 |
| Saunders, Snyder (Porter Hospital) | 6,592 |
| Saunders, Snyder (Longmont Hospital) | 5,465 |
| Smith and West (Mercy Medical Center) | 2,885 |
| TOTAL | $38,504 |

## IV.

As we stated in our Memorandum Opinion and Order dated July 7, 1986, we are convinced that the filing of this lawsuit and the circumstances surrounding it show a clear abuse of the judicial process. The language of Rule 11 imposes an affirmative duty on judges to impose sanctions when the rule has been violated. *Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184, 1187 (10th Cir.1985); *Sealtite Corp. v. General Services Administration,* 614 F.Supp. 352 (D.Colo.1985).

We considered whether a hearing was necessary to determine the appropriateness of imposing sanctions. Where abuse of the judicial process is abundantly clear from the pleadings and affidavits filed, a hearing would serve no purpose. The frivolousness of a Complaint can be ascertained from proper motions to dismiss. Where a Complaint violates Rule 11 by being neither well grounded in fact nor warranted by existing law or a logical extension of such law, or by being interposed for an improper purpose, a Court has a duty to impose sanctions *sua sponte,* if necessary.

Proceedings for the imposition of sanctions may be initiated on motion of a party or on the court's initiative. The Advisory Committee Notes state that "[t]he detection and punishment of a violation of the signing requirement, encouraged by the amended rule, is part of the court's responsibility for securing the system's effective operation". From this one may infer that the rule contemplates judicial action when no motion is made by a party. For effective enforcement and achievement of the rule's deterrent purpose, judges will have to be willing to take the initiative, since lawyers tend to be reluctant to move for sanctions.

Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 197 (1985).

Five of the defendants requested an award of attorney fees and costs on grounds of frivolousness but no motion for sanctions was filed. Due to the clear viola-

tion of Rule 11 in this case, and the fact that the Complaint was the infringing pleading, we decided to impose sanctions *sua sponte.* Although no hearing was necessary to impose sanctions, the evidentiary hearing was necessary to resolve disputes over "reasonable" hourly rates and billed hours. *See* fn. 1, *supra.*

The evidentiary hearing provided further support for our decision to impose sanctions. Lead counsel for plaintiffs testified at the hearing that he had little or no antitrust experience. Further, he did not consult with any antitrust expert prior to filing the Complaint. In addition, he testified that he did not investigate the facts on which his Complaint was based any further than to find that no hospitals in Colorado currently grant privileges to chiropractors. He admitted that the February 3 letter was couched in overly aggressive language. He also stated that the letter was intended to begin discussions with hospitals and was not intended to be vindictive or harassing. In our view, however, the February 3 letter was *not* an application for staff privileges. Correlatively, the hospitals never turned down plaintiffs' "applications". Therefore, the Complaint stated no cognizable claim under the antitrust laws for defendants' "refusal to deal".

■ Sanctions were properly imposed pursuant to Rule 11. A monetary sanction is the most appropriate sanction under the circumstances of this case. We find that the sum of $38,504 is a reasonable award of attorney fees and costs for plaintiffs' violation of Rule 11.

### ORDER

ACCORDINGLY, it is ORDERED that Rule 11 sanctions be assessed jointly and severally against plaintiffs Colorado Chiropractic Council, Timothy D. Conwell, D.C., Dennis P. Nikitow, D.C., George E. Springer, Jr., D.C., Dale Baird, D.C., Daniel K. Baird, D.C. Jim Bondarovich, D.C., Douglas Burke, D.C., William Burson, D.C., Bernard Busch, D.C., Jon Paul Carmichael, D.C., James Davis, D.C., William F. Duchaine, D.C., Paul Farber, D.C., Paul E. Finegan,

D.C., Joseph Gallegos, D.C., Richard E. Garde, D.C., and Terry Grear, D.C., and their counsel of record, Robert Ozer, Esq., and in favor of counsel for defendants, as listed below, in the following amounts:

| Name | Amount |
|---|---|
| Caplan and Earnest (Community Hospital) | $ 7,500 |
| Casey and Klene (St. Anthony Hospital) | 3,609 |
| Holland and Hart (Humana Hospitals) | 7,953 |
| Holland and Hart (St. Francis Hospital) | 4,500 |
| Saunders, Snyder (Porter Hospital) | 6,592 |
| Saunders, Snyder (Longmont Hospital) | 5,465 |
| Smith and West (Mercy Medical Center) | 2,885 |
| TOTAL | $38,504 |

It is FURTHER ORDERED that each party shall bear their own costs in connection with matters relating to the assessment of Rule 11 sanctions. The Clerk of the Court is DIRECTED to enter judgment in accordance with this Opinion.