**STORAGE TECHNOLOGY PARTNERS II, a Colorado Limited Partnership**

v.

**STORAGE TECHNOLOGY CORPORA-TION, a Delaware corporation; Storage Technology Optical Disc Development Corporation, a Delaware corporation; Storage Technology Computer Finance Corporation, a Delaware corporation; Smith Barney, Harris Upham & Co., Incorporated, a Delaware corporation; L.F. Rothschild, Unterburg & Towbin, Jesse I. Aweida, Ryal R. Poppa, Stephen G. Jerritts, Robert A. Burgin, Charles R. Collins, Robert E. LaBlanc, Dr. Harrison Shull, Richard C. Steadman, Thomas F. Wands, William R. Mansfield, and John Does A to Z.**

Civ. A. No. 87–K–776.

United States District Court,
D. Colorado.

Nov. 19, 1987.

---

**MEMORANDUM OPINION AND ORDER**

KANE, District Judge.

On May 27, 1987, Storage Technology Partners II filed suit in this court against

Storage Technology Corporation, fourteen named defendants and John Does A to Z. The complaint was one-hundred and seventy-five paragraphs long. It posited seventeen claims for relief.

Federal jurisdiction was predicated upon four of these claims. The twelfth claim for relief asserted violations of the Securities Exchange Act of 1934 against all defendants. The thirteenth claim for relief sought damages from all defendants for alleged violations of the Securities Act of 1933. The fourteenth claim for relief posited against defendant Smith, Barney and Rothschild an allegation of aiding and abetting Federal Securities violations. The fifteenth claim alleged violations of RICO by all defendants.

On May 28, 1987, in accordance with long established practice in securities cases in this District [1], I declined to exercise jurisdiction over plaintiff's pendent state claims. On July 27, 1987, plaintiff voluntarily dismissed the remaining four claims.

On August 19, 1987, defendant Storage Technology filed a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. On October 28, 1987, in accordance with Storage Technology's request, I held a hearing on this motion. I took the matter under advisement. I now issue this written opinion setting forth my conclusions of law.

## I  BACKGROUND

Storage Technology Corporation (STC) is well known in Colorado. It is a public, multinational corporation with its principal place of business in Louisville, Colorado. Its main commercial activity is the production of computer data storage systems.

STC is the sole shareholder of defendant Storage Technology Optical Disc Development Corporation (ODDC). It is also the sole shareholder of defendant Storage Technology Computer Finance Corporation (CFC). Defendants six to fifteen are all officers or directors of STC or ODDC.

In 1980, STC decided to enter the high performance, optical storage computer market. It needed a vehicle for entry into this new area of computer development. It also needed a means of financing the necessary research for and perfection of the required technology. To these ends it resolved to establish Storage Technology Partners II (the partnership). The managing general partner of the partnership was to be ODDC. The non-managing general partner was CFC.

Defendant Smith, Barney and Rothschild was engaged as the placement agent to sell the necessary limited partnership units. It distributed throughout the United States a private placement memorandum. This memorandum made a series of representations regarding the partnership and the potential financial return on investments therein. The scheme was successful. A lot of money was invested in the partnership. The research was commenced and appeared to progress as planned.

STC began, however, to experience financial difficulties. On October 31, 1984, it filed for protection under Chapter 11 of the United States Bankruptcy Code. The level of investment in the partnership was, plaintiff alleges, gradually reduced.

The limited partner investors of plaintiff removed ODDC from its position of managing general partner of the partnership.

STC emerged from Chapter 11 on June 18, 1987.

## II  THE COMPLAINT

The complaint of May 27 posits a series of allegations regarding the circumstances surrounding the establishment of the partnership, the circulation of the private placement memorandum and the relationship between officers and directors of STC, ODDC and CFC.

It alleges intentional omissions of material fact in the placement memorandum. It alleges conflict of interests between STC, ODDC, CFC, their officers and directors on

---

**1.** Since the decision of Judge Matsch in *Kerby v. Commodity Resources, Inc.*, 395 F.Supp. 786, 791 (D.Colo.1975).

the one hand, and the partnership on the other. It alleges breach of fiduciary obligations by the former in relation to the latter. The complaint asserts STC's act of filing bankruptcy caused STC to be automatically in breach of its obligations to the partnership. It claims the officers and directors of ODDC knew of STC's intention to file under Chapter 11 before the date of such filing. It alleges breach of contractual obligations to the partnership by STC. It asserts ODDC presently holds $1,053,-855.00 of partnership funds which it allegedly refuses to transfer to the new controllers of the partnership.

The state law claims are levelled against various named defendants. These were for conversion or misappropriation of funds, for breach of fiduciary duty, for negligence, for violation of Colorado Uniform Limited Partnership Act, for breach of contract, for constructive fraud, for non-disclosure or concealment, civil conspiracy, intentional misconduct, and Respondeat Superior. Additional claims purport to ground an action under the Colorado Securities Act of 1981 and the Colorado Organized Crime Act.

The twelfth claim for relief was against all defendants and alleged violations of the Securities Exchange Act of 1934. This claim alleged the private placement memorandum contained material omissions of material facts. It purported to state a claim against the defendants for violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78J and Rule 10(b)(5) thereunder. Paragraph 128 of the complaint is important in the context of this claim. It alleges:

> As a consequence of the violation of Section 10(b) and Rule 10(b)(5), Plaintiff has been damaged and continues to be damaged in an amount not yet fully determinable, but at least in the amount of the investments of the Limited Partners, which exceeds $40 million.

Paragraph 136 posits a similar allegation, but phrases the $40 million in terms of damage to plaintiff *and the limited partners*. It furthermore purported to claim for 'anticipated profits and revenues from

the project' outlined above in section I of this opinion.

The thirteenth claim for relief was also against all defendants. It alleged violation of the Securities Act of 1933. It maintained defendants offered or sold securities by use of the mails or instrumentalities of interstate commerce and the mails. It further alleged these documents contained omissions of material facts. Plaintiff purported to state a claim for violation of Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l. There was also mention of a possible claim under Sections 15 and 17 of the 1933 Act. The damage alleged was the same as that outlined in the twelfth claim.

The fourteenth claim is against Smith, Barney and Rothschild. It seeks damages for aiding and abetting the violations of the Securities Acts alleged in the twelfth and thirteenth claims for relief.

The fifteenth claim for relief was against all defendants. It alleged the existence of an enterprise consisting of all named defendants. It further alleged the acts already outlined in the preceding paragraphs of the complaint constituted a pattern of racketeering. It sought damages under 18 U.S.C. § 1961(4) of RICO, 18 U.S.C. § 1961–1968. The damages alleged were the same as those outlined in the preceding four counts.

### III  ENTER RULE 11

Rule 11 of the Federal Rules of Civil Procedure provides that every pleading, motion and other paper of a party shall be signed by an attorney, or in the case of *pro se* parties, by the party himself. It then provides;

> The signature of an attorney or party constitutes a certificate by him that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading,

motion, or other paper is signed in violation of this rule, the court upon motion or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Emphasis Added.

I regard this as one of the most significant provisions of the federal rules, striving, as it does, to regulate the delicate but essential balance between judicial efficiency and party convenience on the one hand and the avoidance of legal inertia on the other.

The latter consideration, expressed by the Rule through the concept of 'extension, modification or reversal of existing law' taints Rule 11 with a hue that makes judicial consideration of the provision particularly difficult. This is because different standards inevitably will govern diverse areas of the law. More open textured issues—such as constitutional questions—will be subjected to a less rigorous examination under this test than, for example, a closely knit and specific statutory scheme, such as the Bankruptcy code.

Rule 11 was amended in 1983, the current objective standard of reasonableness replacing the former bad faith test, see *Burkhart Through Meeks v. Kinsley Bank*, 804 F.2d 588 (10th Cir.1986). The new provision has not, to my knowledge, been the subject of close analysis by the Tenth Circuit [2]. This plus the fact courts are increasingly beseiged by Rule 11 motions so that the provision is actually operating now so as to hinder the very concept of efficient court practice it was designed to facilitate and the recent trend in the circuits to demand more detailed findings from district courts on Rule 11 motions, see

*Thomas v. Capital Sec. Services, Inc.*, 812 F.2d 984 (5th Cir.1987). *Brown v. Federation of State Medical Boards of the U.S.*, 830 F.2d 1429 (7th Cir.1987) prompts me to make some observations on the Rule's requirements. Bearing in mind my comments in the above paragraph, I tailor these remarks to the particular area of securities law in which first these motions have assumed a peculiar role in this district and second, the need for the rule is especially acute, see Judge Matsch's comments in *Kerby v. Commodity Exchange*, 395 F.Supp. at 790.

Rule 11 brings into the Federal Rules a faggot of clumsily assorted functions. Primarily, it obviously ensures a degree of initial regulation over pleadings in demanding they be properly signed, *Stewart v. City of Chicago*, 622 F.Supp. 35, 38 (N.D. Ill.1985). Second, it imposes the distinct, though related, requirements that pleadings should be well grounded factually and legally, and that they should not be filed for an improper purpose. These prerequisites are conjunctive, so it is possible to have a pleading fall foul of Rule 11 though filed for a proper purpose, just as it is possible for a pleading to violate the provision though well grounded in law or fact, *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d. Cir.1985) *cert. denied,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). This requirement has the parallel effect of enforcing and maintaining an acceptable standard of professional conduct amongst the bar, see Judge Matsch's comments in *Slane v. Rio Grande Water Conservation District*, 115 F.R.D. 61, 62–63 (D.Colo.1987). Third, it operates as a compensatory tool for parties who have been forced to respond to irregularly or improperly instituted court proceedings. In this regard, however, it bears an uncertain relation to any given statutory provision explicitly facilitating an attorney fee award.[3] Finally, it serves to

---

**2.** The most exhaustive analysis of Rule 11 in this district is the discussion of the provision, including an excellent analysis of the sanctions facilitated by the rule, by Chief Judge Finesilver in *Colorado Chiropractic Council v. Porter Memorial Hospital*, 650 F.Supp. 231 (D.Colo.1986).

**3.** The interaction between Rule 11 and the Equal Access to Justice Act, is discussed in *Mager v. Heckler*, 621 F.Supp. 1009, 1012–1013 (D.Colo.1985). It might be noted that in contradistinction to most attorney fee provisions, costs in Rule 11 cases may be awarded against pre-

deter improper litigation. The court is requested to impose *an appropriate sanction.* This *may include,* but is clearly not limited to, the costs of the opposing party. Further, it is nowhere stated in the text that an opposing party necessarily must be the recipient of the sanction imposed. I see no reason why in a particularly acute case of abuse, Rule 11 could not be used by a court to compensate itself for time unnecessarily consumed by totally frivolous litigation. It is also clear it may be utilised to fine an offender, *Donaldson v. Clark,* 786 F.2d 1570, 1577 (11th Cir.1986),[4] assuming the procedures required in criminal contempt proceedings are observed, *Cotner v. Hopkins,* 795 F.2d 900, 903 (10th Cir.1986). While not undertaking either of these sanctions in this case, I direct attention to my opinion issued this same date in *First Interstate Bank of Denver v. Estates Partnership, et al.,* 117 F.R.D. 683 (D.Colo. 1987).

I am anxious in this case to focus upon three particular matters. First, the sense to be accorded to the concept of 'improper purpose', second, the character of the sanction to be imposed and third, following from my conclusions on these issues, the important question of how Rule 11 operates against a complaint stating federal claims which are frivolous but state law claims of substance. I shall then examine the adequacy in law of the claims in the instant case. No issue arises as to their adequacy on points of fact.

The operation of Rule 11 can be approached from three separate perspectives: that of the party subject to sanctions thereunder, that of the party moving for sanctions and that of the court. This raises an interesting problem regarding the definition of improper purpose as that phrase is utilized in the provision. The rule provides examples of improper purposes. These are harassment, causing unnecessary delay or causing unnecessary increase in the costs of litigation. In each of these examples,

the improper purpose has a direct and adverse effect upon both the court and the opposing party.

■ In the instant context, however, counsel for plaintiff quite candidly admitted before me at the hearing on this motion that he brought this case into federal court, if not wholly, then largely because he wished his client to have access to what he believed was the superior discovery procedures at our disposal. He did not admit these federal claims were groundless, but he certainly indicated one of his prime motivations for pursuing them was the superior quality of the services provided by the U.S. magistrates. If true, and I clearly offer no view as to whether it is, this is a purpose which benefits both parties to the litigation or at least can benefit both parties, but subjects this court to the unnecessary burden of determining a case which should be decided elsewhere. The filing of a claim in a particular forum in order to avail of such a facility is clearly of a different character from tactics designed to cause 'harassment, unnecessary delay or unnecessary increase in the costs of litigation'.

To interpret the concept of improper purpose as including this class of motivation would force an interpretation out of harmony with those examples qualifying the breadth of the phrase. Thus, in *Coast MFG. Co., Inc. v. Keylon,* 600 F.Supp. 696 (S.D.N.Y.1985) the court refused to characterize as an improper purpose 'unnecessary forum shopping' where state court had a significant backlog and the federal forum was more convenient geographically. I conclude this is not the sense in which the phrase is used in the rule. The rule is not designed *solely* to ease the burden of the courts, but to do so in concert with and in cognizance of the interests of the parties. This interpretation accords with the general trend of the rule to prioritize the interests of the party compelled to defend a

---

vailing parties, *Westmoreland v. CBS,* 770 F.2d 1168 (D.C.Cir.1985).

**4.** *Donaldson* was expressly approved by the Tenth Circuit in *Cotner,* 795 F.2d 900, 903 (10th Cir.1986) on this point. I can only assume any

indications to the contrary in *Chevron, U.S.A. v. Hand,* 763 F.2d 1184 (10th Cir.1985) to be mistaken, see also *Colorado Chiropractic,* 650 F.Supp. at 243.

baseless law suit, rather than those of court efficiency.[5] Besides, to term motivation of this nature 'improper' would be to open a Pandora's box of complex problems, particularly in the field of diversity jurisdiction where parties will frequently choose one of a number of potential fora precisely because of preferences for given procedures, or because of inordinate delays in one of the available venues.

If a violation of Rule 11 is found to have occurred, the court has no option but to impose sanctions on the offending party, *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986). It has, however, a discretion as to what form those sanctions shall assume. As I have already indicated, the norm is for that sanction to assume the form of the opposing party's attorney fees and costs. It is unusual for the court to fine, or publicly reprimand or even publish an opinion on the matter which indicates the name of the offending attorney. These remedies appear to be reserved for particularly egregious conduct indicating, for example, a lack of integrity, Schwarzer 104 F.R.D. at 201–202.

If it decides to award attorney fees, however, the court is clearly under no obligation to award the full amount the opposing party might have incurred in defending or prosecuting the relevant suit. It is in this regard the operation of the rule differs from the more rigid requirements of an attorney fee statutory provision. Mitigating factors may be taken into account. The concept of improper purpose and that of 'groundless in law or fact' can fuse here, so that the attorney's motives in filing the complaint can play a role in the calculation of the sanctions. This is important, for a

violation of the Rule need not be wilful before the requirement that a sanction be imposed arises, *Duncan v. WJLA–TV, Inc.*, 106 F.R.D. 4, 6 (D.D.C.1984). The presence of bad faith, however, will increase the extent of the sanction, *Colorado Chiropractic Council*, 650 F.Supp. at 243. Also relevant are the degree of frivolousness, the need for compensation, the nature of the litigation and the deterrent purpose of Rule 11 in general *id.*

Finally it is necessary to address an aspect of this case which has recurred in other Rule 11 cases before this court. Most of the original complaint lodged in the instant case was dismissed without prejudice. No claim has been made by defendants in moving this motion that the state law claims sought to be pursued were groundless within the meaning of Rule 11. There is a split on the question of whether Rule 11 addresses itself only to the pleading as a whole and accordingly whether it can be used to impose sanctions for unmeritorious parts of a complaint or a motion or whether part of a pleading may be impugned under the section. This does not pose a significant problem in the instant context since the pendent state law claims were dismissed the day after the complaint was lodged. Accordingly, the complaint for the purposes of the motion consists only of the federal law claims. Neither the court nor defendants incurred any prejudice as a result of the pendent claims being filed. In this district, in fact, it is so well established that pendent state law claims will not be entertained in securities actions that it should rarely pose a problem. Counsel should bear this fact in mind when filing such complaints.

---

5. Although there are proponents of the view the principal function of the rule is the prevention of abuse, Schwarzer, *Sanctions Under The New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, the emphasis both within the provision and among the courts applying it appears to be upon the function of the Rule as a cost-shifting instrument. Thus, the imposition of costs—or indeed other sanctions serving to compensate the opponent—is a more frequently applied remedy, it is the award of attorneys fees which is explicitly referred to in the Rule and, as I have indicated, improper purpose is defined in terms of not only inconvenience to the court but inconvenience to both the court *and* the opposing party. The popular interpretation of Rule 11 along these lines is most effectively criticized by Judge Pratt in his dissent in *Eastway Construction Co. v. City of New York*, 821 F.2d 121, 125 (2d Cir.1987) ('[w]e should end the misleading practice of justifying what are in reality punitive fines by pretending that they represent attorney's fees').

The point has been addressed to me in the past, however, and I am anxious to clarify my view of the position. I have two reasons for holding sanctions are appropriate where spurious federal claims are utilized to bring state law claims before this court. First, I do not agree that Rule 11 only addresses itself to the pleadings in their entirety. This argument appears to depend for its validity upon the fact Rule 11 refers to pleadings, motions or other papers, and not to the parts thereof, *Martinez v. H. Landau & Co.*, 107 F.R.D. 775, 777 (N.D.Ind.1985). Rule 8(e)(2) of the Federal Rules, for example, specifically posits in regard to pleadings that '[a]ll statements shall be made subject to the obligations set forth in Rule 11.' I subscribe to the view that the *Martinez* interpretation 'appears at odds with both the language of, and the rationale for, the 1983 amendment to Rule 11,' *Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 933 n. 12 (D.Ill.1985) and see *Kuzmins v. Employee Transfer Corp.*, 587 F.Supp. 536 (N.D.Ohio 1984). I am confident that provided a party has incurred sufficient prejudice as a result of frivolous claims in a pleading or motion, sanctions must be imposed. I emphasize the necessity for sufficient prejudice. I do not believe this interpretation will increase the flood of Rule 11 motions if this requirement is borne in mind. It will be unusual for one groundless claim in a complaint or pleading to give rise to any real inconvenience for an opposing party. Where that claim, however, has been utilized so as to bring a case into a court where it does not belong, such prejudice is readily determinable. Moreover, considerations of federalism and comity with state courts suggest that this sort of grasping for federal jurisdiction should be emphatically discouraged.

Second, Rule 11 must be construed with the needs of the federal system as a whole in mind. If the services of the federal courts have been prevailed upon on a fraudulent, spurious or manufactured basis, the rule comes into operation, see *Weisman v. Rivlin*, 598 F.Supp. 724, 726 (D.D. C.1984) ('[s]ince the only basis for federal jurisdiction was ... diverse citizenship [counsel] had an obligation to make a reasonable inquiry into the basis for diversity'). In *Weir v. Lehman*, 105 F.R.D. 574, 576 (D.Colo.1985), I imposed sanctions where a federal claim duplicated a state court action on the basis the claim needlessly expanded the scope of litigation at the expense of judicial efficiency. That is not to say a party will be compensated for efforts expended upon claims which will eventually be litigated in another forum. This, however, is a question to be resolved at the stage of calculation of the sanction. The point remains that *a sanction must be imposed.*

I will now consider the limb of Rule 11 governing the adequacy in law of the claims in this case.

## IV   A FRIVOLOUS FEDERAL SUIT?

*Section 12(a) of the Securities Act, 1933.*

Section 12(a) of the Securities Exchange Act, 1933, 15 U.S.C. § 771(2) subjects to liability any person selling or offering a security by the use of specified means who communicates a prospectus containing material omissions of fact. This liability, however, is specified as being to the *'person purchasing such security from him'*. Plaintiff here was not a purchaser in any sense of the term. The complaint does not allege it purchased any securities. It simply could not, even looking at the face of the provision, sustain a claim on this ground. This claim was frivolous and unwarranted by existing law or any conceivable extension thereof.

This conclusion has been made clear by all courts facing suits brought under the section by non-purchasers of securities see e.g. *Kellman v. ICS, Inc.*, 447 F.2d 1305 (6th Cir.1971). Further, in *Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F.Supp. 145 (S.D.N.Y.1984) the specific question of a limited partnership's standing was addressed. The court made quite clear its view that only a purchaser could sue under the section and that the limited partnership itself was not a purchaser. The filing of a claim under section 12(2) in these circumstances is a chrystal clear example

of the 'sue now, inquire later mentality' Rule 11 was designed to prevent, *Foster v. Michelin Tire Corp.*, 108 F.R.D. 412, 415 (C.D.Ill.1985).

Further, plaintiff here filed suit outside the limitation period specified in Section 13 of the Act, 15 U.S.C. § 77m, of three years. This period is not subject to equitable tolling, *Aldrich v. McCulloch Properties Inc.*, 627 F.2d 1036, 1042–43 (10th Cir.1980). Disregard of limitation periods will in itself activate Rule 11, *Van Berkel v. Fox Farm and Road Machinery*, 581 F.Supp. 1248, 1251 (D.C.Minn.1984).

*Rule 10(b)(5)*

Long before the current amendments to Rule 11 of the Federal Rules of Civil Procedure, the Supreme Court said of Rule 10(b)(5)

> litigation under Rule 10(b)(5) presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general.
>
> *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 [95 S.Ct. 1917, 1927, 44 L.Ed.2d 539] (1975).

It is against this background the effect of Rule 11 must be evaluated.

The complaint in the instant case purported to state a claim under Section 10(b) of the Securities Exchange Act, 1934, 15 U.S.C. § 78j and Rule 10(b)(5) thereunder.

A plaintiff seeking to recover under section 10(b) must allege first that in connection with the purchase or sale of securities, the defendant acting with requisite scienter made a false material representation or omitted to disclose material information and second that plaintiff's reliance upon defendant's actions caused him injury, see e.g. *Fannye Markel v. Scovill Manufacturing Company*, 657 F.Supp. 1102, 1987–1 Trade Cas. (CCH) P67,582 (W.D.N.Y.1987).

I have outlined the damages as claimed by plaintiff in its complaint above. These are completely inadequate. Insofar as damage is alleged to have been connected with the sale or purchase of securities, the damage suffered was that of the limited partners and not the partnership. Insofar as damage was alleged to have been incurred by plaintiff it was simply not connected with the sale or purchase of securities.

It is well established that failure to insure damage alleged in a complaint actually exists provides a general basis for Rule 11 sanctions, see *Rhinehart v. Stauffer*, 638 F.2d 1169 (9th Cir.1979). I requested plaintiff's attorney to explain at the hearing I held on this motion exactly what damage was sustained by plaintiff. His response was to catalogue a series of alleged injuries all of which sprang from a series of other legal theories, ranging from breach of contract to breach of fiduciary duty. These will not suffice to state a Rule 10(b)(5) claim, see *In re Catanella and E.F. Hutton and Co.*, 583 F.Supp. 1388, 1402 (E.D.Pa.1984)

Had this been a simple omission or miscalculation on his behalf, I should hesitate to impose Rule 11 sanctions. But it was not. It amounted to an attempt to present a legal claim on behalf of an entity which not only in fact had not, but could not conceivably have had a cause of action under Rule 10(b)(5). It is not only a proposition of utter commonsense that an entity which receives funds as a result of fraudulent representations cannot sue those responsible for such representations, but one clearly supported by authority, see *Johnson v. Chilcott*, 590 F.Supp. 204, 208 (D.Colo.1984) and the authorities cited therein. The claim was again of such a nature as to justify Rule 11 sanctions. This is all the more so given the caution of the Supreme Court cited above.

*RICO*

I have made known my view in the past that groundless RICO claims are prime candidates for Rule 11 sanctions, *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299, 1306 n. 5 (D.Colo.1984). Plaintiff faces the exact same problem as arose from the Section 10(b) claim as to establishing damage. A plaintiff only has standing to pursue a RICO claim if it can sustain allegations of damage caused by the predicate acts, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496–497, 105 S.Ct. 3275, 3285–3286, 87

L.Ed.2d 346 (1985). I fail to see how this could be the case here and none of the allegations of damage posited by plaintiff relate at all to the predicate acts as detailed in the complaint.

## V  CONCLUSION

■ Plaintiff's attorney here violated Rule 11. He did so by maintaining a frivolous and baseless federal suit. He did so for the purpose of litigating in federal court rather than in state court. He did not do so in bad faith. Sanctions must be awarded against him in accordance with the terms of the rule. I have decided that in the circumstances of this case, the upper limit of those sanctions shall be the costs and attorney fees incurred by defendant defending this suit and in bringing this motion. I will decide when calculating the sanction to be imposed whether it must be born by plaintiff's attorney himself or by both attorney and client. I will decide then also the extent of the sanction. I must emphasise, however, that defendant will *not* be compensated for time spent on claims that are currently being litigated in state court.

It is accordingly ORDERED

1. Defendant's motion for sanctions pursuant to Rule 11 F.R.C.P. is GRANTED.

2. Defendant shall submit a full account of costs and fees within ten days of the date of this order.

3. Plaintiff may respond to this account within ten days of the receipt of defendant's account.