In re Jack **FAIRES**, Debtor.

**EAST PLAINS DEVELOPMENT CORPORATION, Plaintiff,**

v.

**Dennis W. KING, Trustee; Jack Faires; and Citizens Bank of Westminster, Defendants.**

Bankruptcy No. 90–B–05655–C.
Adv. No. 90–1154–SBB.

United States Bankruptcy Court, D. Colorado.

Jan. 22, 1991.

R. Antonio Lucero, Denver, Colo., for plaintiff, East Plains Development Corp.

Cipriano Griego, Denver, Colo., for debtor/defendant, Jack Faires.

Kevin Haight, Denver, Colo., for defendant, Citizens Bank of Westminster.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on Plaintiff's Motion for Default Judgment filed September 24, 1990, Defendant Citizens Bank of Westminster's Objection

thereto filed October 5, 1990, Bank's Motion for Summary Judgment filed November 21, 1990, Plaintiff's Objection to Bank's Motion for Summary Judgment filed December 5, 1990, and Bank's Reply to Plaintiff's Objection to Motion for Summary Judgment filed December 14, 1990. The Court, has fully reviewed the file, pleadings, and memoranda.

The general issue before the Court is a determination of legal title to property which was transferred between, or among, (1) Jack Faires, the Chapter 7 Debtor and Defendant in this action, (2) a closely-held and related corporate entity, the Plaintiff, East Plains Development Corporation ("Plaintiff" or "EPDC"), and (3) the Debtor's son, James Faires, prior to this, Debtor's second, bankruptcy case. Plaintiff filed the Complaint in this action claiming title to certain property held by the Trustee and also claimed by a creditor of the Debtor, Defendant and intervenor, Citizens Bank of Westminster ("Bank"). EPDC claims title, requests turnover of the property and, in effect, asks for declaratory judgment on the parties' rights and title to the vagabond property.

The Court concludes that, based on the doctrine of *res judicata*, the Debtor transferred property, pre-petition, to hinder, delay or defraud creditors and, consequently, title to the subject property lies with the Trustee. The Court further concludes that an award of attorney's fees in favor of the Bank, as sanctions against the Plaintiff, is required and proper pursuant to B.R. 7011 and Rule 11, F.R.Civ.P.

## I. FACTUAL BACKGROUND.

The following is a chronology of events leading up to the filing of the instant adversary proceeding:

| | |
|---|---|
| August 12, 1985: | Debtor executed a promissory note in favor of the Bank or its predecessor-in-interest. |
| Sometime thereafter: | The promissory note fell into default. |
| August, 1986: | Debtor filed a Chapter 11 Bankruptcy Petition (Case No. 86–B–06123–M). |
| September 24, 1987: | Debtor's Chapter 11 case was dismissed by stipulation. |
| September 29, 1987: | Plaintiff was incorporated in Colorado. Secretary of State records reveal the following officers and directors: <br> President and Director—James Faires (Debtor's son). <br> Treasurer and Director—Jeanne Faires (Debtor's daughter-in-law and James Faires' wife); and <br> Director—Esther Faires (Debtor's wife). |
| November 12, 1987: | Bank filed suit against Debtor on the 1985 promissory note in Adams County District Court, Civil Action No. 87–CV–2322. |
| December 14, 1987: | Debtor conveyed* his ownership interests in the following assets to Plaintiff: |

1. Barth Motor Home (also referred to as an RV or Winnebago), VIN # S104RS00017; Colorado Title No. 12M546573;
2. 1982 Freightliner Semi-Tractor, VIN # 1FUPYDYB6CP211535; Colorado Title No. 12M530206; and
3. Fruehauf End–Dump Trailer; VIN # 1H4D02729CF020901; Colorado Title No. 12M529413.

*The vehicles were allegedly conveyed in exchange for work done by James Faires during the course of the year during which Debtor was in Chapter 11. The Colorado state court indicated that the bankruptcy pleadings reveal that James Faires, through Jeanne Faires, was paid $3,600.00 per month on a draw account. The court was presented no evidence

regarding whether and when such a draw was available, whether and when those payments were made, and whether and how much work was performed by James Faires. (Transcript of April 20, 1990 hearing, at p. 5.)

| | |
|---|---|
| May 11, 1988: | Summary judgment was entered in favor of the Bank and against Debtor in 87–CV–2322 for $163,686.54 plus statutory interest after February 2, 1988. |
| September 2, 1988: | Bank filed suit in state court against Debtor and Plaintiff under Colorado fraudulent conveyance law in Adams County District Court, Civil Action No. 88–CV–1811. |
| April 20, 1990: | Following trial, judgment was entered in favor of the Bank and against Debtor and Plaintiff in 88–CV–1811. The Court ordered the reinstatement of Debtor's name to the titles of the vehicles. The Court found the previous title transfer void as fraudulently made to avoid attachment by Bank. The judgment was self-executing and was not appealed.[1] |
| May 2, 1990: | By Bill of Sale, Plaintiff reconveyed the vehicles to Debtor. |
| May 4, 1990: | Debtor, Jack Faires, filed a Chapter 7 Bankruptcy Petition (90–B–05655–C). On page two of his Statement of Financial Affairs for Debtor Not Engaged in Business, he states in regard to the Bill of Sale, "Debtor denies that he has any interest whatsoever in said property and disputes any claim that he does." |
| July 30, 1990: | Plaintiff filed the present "Complaint to Determine Ownership and to Reclaim Property," alleging that the Trustee is holding the three vehicles "against the lawful ownership interest" of Plaintiff and requesting that the Court order the immediate release of the vehicles to Plaintiff (90–1154–SBB). |
| August 7, 1990: | Without knowledge of Plaintiff's action, the Bank filed a Complaint requesting denial of discharge (90–1195–PAC). |

---

Plaintiff's motion to consolidate the two adversary proceedings was denied (November 7, 1990) and the Bank was given leave to intervene in the present proceeding (November 7, 1990). Bank filed its Answer on November 16, 1990 generally denying that any ownership interest in the vehicles lies in Plaintiff and set forth Rule 12(b)(6), F.R.

Civ.P., *res judicata* and lack of consideration as affirmative defenses.

The predicate motions for this Opinion are:

1. Plaintiff's Motion for Default Judgment filed September 24, 1990, based upon Debtor/Defendant's failure to answer or otherwise respond.[2] Bank ob-

---

**1.** At the hearing, Debtor maintained that he was merely holding the vehicles in trust for either Faires Enterprises or Faires Leasing or some other entity owned by Debtor and James Faires. Secretary of State records reflect that Faires Leasing Company (Officers and Directors: Debtor, Esther Faires, and James Faires) was incorporated on October 6, 1977. The corporation has been suspended since September 3, 1989. Faires Enterprises, Inc. was incorporated on August 18, 1980 but was dissolved January 1, 1990.

Debtor's bankruptcy statements indicate that Debtor conducted two other businesses, Fair Oaks Corporation (1984–1988; Debtor, President, and James Faires, Vice–President) and Teller Street Construction Services, Inc. (1984–

1985; Debtor, President, and James Faires, Vice–President). These entities do not appear in the current state database. The records reflect that Esther Faires is currently a Director of TLC Holdings, Inc., a Colorado domestic non-profit corporation, incorporated June 11, 1990. The other directors of this entity do not share her surname.

**2.** Interestingly, Plaintiff EPDC is represented by:

    R. Antonio Lucero
    3030 West 38th Avenue
    Denver, CO 80211
    (303) 455–7699

Debtor/Defendant is represented by:
    Cipriano Griego
    3030 West 38th Avenue

jected on October 5, 1990 based upon its then outstanding motion for leave to intervene; and

2. Bank's Motion for Summary Judgment filed November 21, 1990. Plaintiff objected on December 5, 1990 and Bank replied on December 14, 1990.

## II. DEFAULT JUDGMENT.

■ The Bank has been allowed to intervene as a Defendant pursuant to Order of Court entered November 7, 1990 and has timely answered. The Motion for Default Judgment cannot be granted against the original Defendants without adversely affecting Bank's rights in this case. Pleadings filed are timely and proper. The Motion for Default Judgment shall be denied.

## III. SUMMARY JUDGMENT.

■ This Court must determine whether any genuine issue of material fact exists. *See, e.g., R–G Denver, Ltd. v. First City Holdings of Colorado, Inc.,* 789 F.2d 1469, 1471 (10th Cir.1986); *United States for Use of Mobile Premix Concrete, Inc. v. Santa Fe Engineers, Inc.,* 515 F.Supp. 512, 514 (D.Colo.1981). In the present case, the only factual[3] issue is: Who owned the vehicles at the time the Debtor's Petition was filed? The intervenor, Bank, argues that *res judicata* applies to resolve the issue—that the Bankruptcy Court is bound by the state court decision voiding the Debtor's transfers to EPDC—and that summary judgment in favor of the estate/Trustee is, therefore, proper.

### A. *Res Judicata.*[4]

*Res judicata* ensures the finality of decisions. Under *res judicata,* "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. U.S.,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). It prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329, rehearing denied, 309 U.S. 695, 60 S.Ct. 581, 84 L.Ed. 1035 (1940). "*Res judicata* thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). "Because *res judicata* may govern grounds and defenses not previously litigated, ... it blockades unexplored paths that may lead to truth.... It therefore is to be invoked only after careful inquiry." *Id.,* at 132, 99 S.Ct. at 2210.

The doctrine of *res judicata* stands for the proposition that "a judgment rendered by a court of competent jurisdiction upon a question involved in one suit is conclusive upon that question in any subsequent litigation between the same parties. A judgment may be erroneous in law, but if it becomes final it is still binding and conclusive as between the parties upon the question involved." *Goldsmith v. M. Jackman & Sons, Inc.,* 327 F.2d 184, 185 (10th Cir. 1964) (footnotes omitted). "[A] prior adjudication between the parties or their privies on the same cause of action is conclusive as to all matters which are, were, or should have been litigated. [Citations omitted.] The doctrine requires an identity of issues as between the cases involved." *Guarantee Acceptance Corp. v. Fidelity Mortgage Investors,* 544 F.2d 449, 451 (10th Cir.1976). *See also, Kindom Uranium Corp. v. Vance,* 269 F.2d 104, 106 (10th Cir.1959) (a prior state court judgment refusing to set

Denver, CO 80211
(303) 455–7699

**3.** This is, perhaps, more correctly denoted a *legal* issue, but as explained later, the events, transactions, and "facts" regarding transfers of title are essentially undisputed.

**4.** In *Brown v. Felsen,* 442 U.S. 127, 138, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979), the United

States Supreme Court held that *res judicata* does not apply where a pre-petition state court judgment is presented to prove a dischargeability issue in a bankruptcy court. Bank may not be able to raise *res judicata* as a ground for denying discharge in the other adversary proceeding, 90–1195–PAC, pending before Judge Clark. This is not, however, such a case.

aside a conveyance as fraudulent was not given *res judicata* effect in a later bankruptcy action because, although the aim of the proceedings was identical, the parties were not identical and the actions were not premised on identical rights).

There is no dispute that the parties to the prior state court suit are the same parties as are presently before this Court. Further, there has been no allegation that the state court lacked jurisdiction. The only question even arguably open to discussion is whether or not there was an identity of issues.

The Adams County District Court based its ruling upon the following statute:

38–10–117. *Conveyances to defraud creditors void.* Every conveyance or assignment in writing or otherwise of any estate or interest in lands, goods, or things in action or of any rents and profits issuing thereupon, and every charge upon lands, goods, or things in action or upon the rents and profits thereof made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suits commenced, or decree or judgment suffered with the like intent as against the person so hindered, delayed, or defrauded shall be void. C.R.S. § 38–10–117.[5]

▪ Under this statute, fraud may be inferred from the facts and circumstances. *See, e.g., Grimes v. Hill,* 15 Colo. 359, 363,

25 P. 698, 698 (1891); *Helm v. Brewster,* 42 Colo. 25, 93 P. 1101 (1908). The necessary element to bring a case under this statute is that the parties *intended* by such conveyance to hinder, delay, or defraud creditors. *See, e.g., Gregory v. Filbeck,* 12 Colo. 379, 382, 21 P. 489, 490 (1889); *Fish v. East,* 114 F.2d 177, 183 (10th Cir.1940). When the parties to a transfer are related or married, they have the burden of proving the innocence and integrity of the conveyance. *See, e.g., Chalupa v. Preston,* 65 Colo. 400, 407, 177 P. 965, 968 (1918).

After stating the *Chalupa* burden of proof, in the state court case Judge Bockman found as follows:

In this particular case, there is no evidence presented by the defendant as to how much work Mr. James Faires performed or whether he was or was not paid for that work.... The defendant has the burden of establishing that Mr. James Faires had performed work and was not paid, and that he did have a lien or an interest in the property which would allow for a good-faith conveyance with consideration. That evidence has been totally lacking.... Therefore, ... the Court would find that the defendants have failed to meet their burden; that there is a presumption of irregularity.... Therefore, today's date, the Court will find the three conveyances in question to have been fraudulent and would order and direct that the title to

---

5. Although not part of the Court's express ruling, C.R.S. § 38–10–114 was apparently cited in the Complaint and also tends to fit these circumstances. That statute reads, in pertinent part, as follows:

38–10–114. *No delivery or change of possession-effect.* Except ... where evidence of the transaction is ... duly noted on the certificate of title to such goods and chattels by the authority issuing such certificate ... every sale made by a vendor of goods and chattels in his possession or under his control ... unless each shall be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things sold ... shall be presumed to be fraudulent and void as against the creditors of the vendor, ... and this presumption shall be conclusive.

C.R.S. § 38–10–114.

Concurrent or joint possession is inadmissible. *See, e.g., Wilcox v. Jackson,* 7 Colo. 521, 526, 4 P. 966, 969 (1884); *Bassinger v. Spangler,* 9 Colo. 175, 179, 10 P. 809, 812 (1886) ("The statute is plain, positive, and peremptory. It admits of no excuse for leaving personal chattels, capable of manual delivery and removal, in the apparent possession of the vendor; nor does it admit of a construction whereby there may be a joint or concurrent possession in both vendor and vendee; nor can a case be taken out of the statute, nor can the statute be satisfied, by proving that a sale was bona fide, and no fraud intended."); *Atchison v. Graham,* 14 Colo. 217, 224, 23 P. 876, 878 (1890) ("The rule is an arbitrary one."). A creditor's knowledge of the fraudulent sale is immaterial. *See, e.g., Davis v. Patterson,* 69 Colo. 226, 228, 193 P. 662, 663 (1920); *Allen v. Steiger,* 17 Colo. 552, 558, 31 P. 226, 228 (1892).

the three items shall revert to the title as it existed before Mr. Jack Faires transferred his claimed interest in the propert[y].

(Transcript of April 20, 1990 hearing, at pp. 5, 7.)

The issue decided by Judge Bockman and the issue presented by the instant Complaint are the same: Who holds title to the vehicles, Debtor or Plaintiff? This issue was fully litigated between the parties now before this Court by a state court which had jurisdiction over both the parties and the subject matter, and that court entered a final judgment resolving the issue.

### B. *Plaintiff EPDC's Objection.*

The Objection by Plaintiff asserts the following:

1. Bank lacks standing to try to avoid a transfer of interest in the property. Only the Trustee has such power. 11 U.S.C. § 548(a).

While it is true that ordinarily only the Trustee may seek avoidance of a transfer, Plaintiff misses the point. Bank maintains that the previous state court order has **already** voided the transfers and that the avoidance occurred pre-petition and is outside the Bankruptcy Code sections which give similar powers to the Trustee.[6] Plaintiff's Complaint is in the nature of one for declaratory judgment; to sort out title and respective rights of the parties.

2. Bank is attempting to avoid a transfer that was made more than one year before the Petition date. Neither Bank nor the Trustee can seek such avoidance. 11 U.S.C. § 548(b).

Again, this statement of law simply does not apply to the facts of this case. No avoidance is sought, only recognition of a previous controlling state court judgment which accomplished the same thing.

3. As to *res judicata*, Plaintiff argues that the Adams County District Court "only" found "that the conveyances in question were fraudulent and subsequently ordered that title to the three items revert to the debtor." Plaintiff asserts that C.R.S. § 38–10–117 uses a different standard than that set forth in 11 U.S.C. § 548(a)(1). "The Adams County District Court did not rule as a matter of law that there was an actual intent to defraud creditors."[7]

If this Court had been asked to apply principles of collateral estoppel in this case these distinctions might become relevant. Bank is not asking this Court to apply the state court's finding of fraud to its determination under Section 548 that the conveyance was fraudulent and, therefore, void under the Bankruptcy Code. Instead, Bank presents this Court with a valid pre-petition final judgment of a competent state court that determined the very issue presented by the Complaint—who held legal title to the vehicles as of the date of the Petition, and, consequently, who is entitled to the benefits of such property?

Bank's Reply attempts to respond to each of these assertions. The Reply also points to the May 2, 1990 Bill of Sale, which purports to reconvey the vehicles to Debtor.

> And since the judgment was self-executing, in that it voided the earlier conveyance from the Debtor to East Plains as a matter of law, East Plains cannot claim that it was under any kind of *in personam* order from the Colorado District Court to execute the Bill of Sale back to the Debtor.... Under these circumstances, where East Plains divested itself of the very interest which it claims in its Complaint that it owns, [Bank] submits that the Complaint in this adversary pro-

---

6. Plaintiff concludes, "[Bank] is attempting to substitute itself for the trustee and argue a position that only can be argued by the trustee." Objection to Motion for Summary Judgment, at p. 1. Although referring to the Trustee's role in avoiding transfers, this statement raises an interesting question: Why has the Trustee failed to take a stance similar to that of Bank, or, for that matter, even a stance at all?

7. As noted above, however, intent is the necessary element to bring a case under C.R.S. § 38–10–117. The Court, by finding that Debtor and Plaintiff violated the statute, necessarily found the element of intent. Bank's reply on this issue hits all around the point without ever scoring a "bull's eye."

ceeding was at best frivolous from the outset, at worst fraud upon this Court. [Bank] requests the Court to impose sanctions upon East Plains and—if appropriate—upon East Plains' counsel as well, for requiring [Bank] to incur legal fees and expenses defending against the Complaint in this adversary.

Bank's Reply to Plaintiff's Objection to Motion for Summary Judgment, at p. 2.

## C. *Sanctions.*

The above-quoted portion of Bank's Reply requests that the Court impose sanctions. The Tenth Circuit has established that courts in this Circuit must evaluate the conduct of litigation by a standard of "objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document." *Adamson v. Bowen,* 855 F.2d 668, 673 (10th Cir.1988).

This circuit has adopted the view that an attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions. [Citation omitted.] A good faith belief in the merit of an argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.

*White v. General Motors Corp., Inc.,* 908 F.2d 675, 680 (10th Cir.1990).

■ Attorneys are under an **affirmative duty** to insure that the pleadings are reasonable in light of the facts and the law. *See, e.g., Weir v. Lehman Newspapers, Inc.,* 105 F.R.D. 574, 576 (D.Colo.1985). As such, the signers have a personal duty to "stop, think and investigate" before filing any pleading. *Id.,* at 576 (quoting Rothschild, Fenton & Swanson, *Rule 11: Stop, Think, and Investigate,* Vol. II, No. 2, Litigation 13 (Winter 1985).) *Accord, Adamson, supra* at 673; *Murphy v. Klein Tools, Inc.,* 123 F.R.D. 643, 645 (D.Kan.1988); *Unioil, Inc. v. E.F. Hutton & Co., Inc.,* 809 F.2d 548, 557–558 (9th Cir.1986), *cert. denied* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987); *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1508 (9th Cir.1987); *Donaldson v. Clark,* 819 F.2d 1551, 1556

(11th Cir.1987); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2nd Cir.1985).

■ This inquiry must be made into both fact and law. A belief, no matter how sincere, that the law supports the signer's position is not sufficient to satisfy the requirements of Rule 11. *Collin County, Texas v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN),* 654 F.Supp. 943, 954 (N.D.Tex.1987). Where a reasonable amount of research would have revealed that there was no legal foundation for the position taken, Rule 11 sanctions are appropriate. *Accord, Collin County, Tex., supra* at 954; *Rodgers v. Lincoln Towing Service, Inc.,* 596 F.Supp. 13, 22 (N.D.Ill.1984), *aff'd,* 771 F.2d 194 (7th Cir. 1985); *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.1986), *cert. denied* 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986).

■ The adequacy of an attorney's pre-signing inquiry is no longer judged by a subjective good faith standard. The new Federal Rule 11 and its derivative, B.R. 9011, impose an objective standard, the strictness of which depends upon the issues involved in a particular pleading. *Adamson, supra* at 673; *Colorado Chiropractic Council v. Porter Memorial Hospital,* 650 F.Supp. 231, 238 (D.Colo.1986); *Storage Technology Partners II v. Storage Technology Corp.,* 117 F.R.D. 675, 678 (D.Colo. 1987) ("More open textured issues—such as constitutional questions—will be subjected to a less rigorous examination under this test than, for example, a closely-knit and specific statutory scheme, such as the Bankruptcy Code."); *Eastway Construction Corp., supra* at 253. No longer does a court have discretion in deciding whether or not to impose sanctions. If a violation of the Rule is found, sanctions are mandatory. *Colorado Chiropractic Council, supra* at 244; *Storage Technology Partners, supra* at 680; *Eastway Construction, supra* at 254, n. 7.

■ Counsel for Plaintiff should have discovered two significant facts in its investigation before filing the instant Complaint: first, the outstanding state court judgment

and order revesting title in the Debtor and, second, the May 2, 1990 Bill of Sale transferring title out of the Plaintiff's name to the Debtor. Either one of these facts should have put the legitimacy of the claim to title advanced by Plaintiff in serious doubt. Instead, these facts were either not discovered by counsel[8] or they were deliberately omitted from the pleadings possibly in hopes that they might not be revealed to, or discovered by, the Court. Neither scenario can be countenanced.

Based on an examination of the chronology of this dispute and the objective merit of Plaintiff's Complaint, the Court can conclude that this adversary proceeding is only the latest in a long and tortured six-year history of questionable legal acrobatics by the Debtor and dubious litigation gymnastics by his counsel. Termination of such acrobatics and deterrence of such tactics are primary functions of sanctions which will, in part, be served in this case.

> Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management. [Citation omitted.] Deterrence is, however, the primary goal of the sanctions.
>
> *White v. General Motors Corp., Inc., supra* at 683.

This Court will grant an award of reasonable attorney's fees to the Defendant Bank in this case.[9] The Court will assess reasonable fees after receipt of a legally sufficient, timely-filed sworn affidavit of fees and services submitted by Bank's counsel and an opportunity for the Plaintiff to respond accordingly.

## IV. CONCLUSION.

For the reasons set forth above, the Court orders as follows:

1. Plaintiff's Motion for Default Judgment is hereby DENIED.
2. Bank's Motion for Summary Judgment is hereby GRANTED.
3. Bank's request for an award of sanctions is hereby GRANTED. Counsel for the Bank shall submit to the Court and to counsel for the Debtor a sworn affidavit of fees and services within twenty (20) days after the date this Order becomes final and non-appealable, after which Plaintiff's counsel shall have ten (10) days to submit to the Court a statement, in writing, as to why an award of attorney's fees, in whole or in part, is not justified or fees requested are not reasonable.

---

8. The fact that counsel for Plaintiff EPDC shares office space with counsel for the Debtor, Jack Faires, makes this scenario highly unlikely, especially in view of the fact that the statements were amended on June 20, 1990 and attached a copy of the Bill of Sale, and the Complaint was not filed until July 30, 1990, over one month later.

9. The standards the Court will follow include those recently expressed by the Tenth Circuit Court of Appeals in *White v. General Motors Corp., Inc.,* wherein the Tenth Circuit indicated that courts should expressly consider the following circumstances when determining if monetary sanctions are appropriate in a given case:

(1) [R]easonableness of fees, (2) minimum to deter, (3) ability to pay, and (4) other factors such as offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances.

*White v. General Motors Corp., Inc.,* 908 F.2d 675, 684–685 (10th Cir.1990).